NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| HAROLD M. HOFFMAN, individually and on behalf of those similarly situated, | : : : : | Civil Action No. 12-cv-05870 (SDW) (MCA) |
| Plaintiff, | : : | **OPINION** |
| v. | : : | |
| NORDIC NATURALS, INC., | : : | April 17, 2014 |
| Defendant. | : : : | |

WIGENTON, U.S.D.J.:

This matter comes before the Court upon motion by Defendant Nordic Naturals, Inc.

("Defendant" or "Nordic Naturals") for judgment on the pleadings under Fed. R. Civ. P. 12(c)

and to strike the class allegations pursuant to Fed. R. Civ. P. 12(f). (June 14, 2013, ECF No. 24).

Pursuant to Fed. R. Civ. P. 78, no oral argument was heard.  Based on the following and for the

reasons expressed herein, Defendant's motion for judgment on the pleadings is **granted** and the

Complaint filed by Harold M. Hoffman ("Plaintiff" or "Hoffman") (ECF No. 1-1) is **dismissed**

**without prejudice**.

## I.    BACKGROUND[1]

On August 15, 2012, Plaintiff, an attorney, filed a pro se class action Complaint against

Defendant in the Superior Court of New Jersey, Bergen County, Law Division.  (ECF No. 1-1).

In the Complaint, Plaintiff asserts that he purchased Defendant's product, *Nordic Naturals*

*Ultimate Omega* ("Ultimate Omega"), an Omega-3/Omegal-9 fatty acid fish oil supplement, "in

or about May of 2012."  (Compl. ¶ 1).  Plaintiff alleges that Defendant presented false

---

[1] The facts set forth in this Opinion are taken from the parties' respective moving papers and filings.

representations about the quality, testing and labelling standards it employed with respect to Ultimate Omega.  (Compl. 1-2, ¶ 10).  Specifically, Plaintiff claims that "based upon sophisticated, independent laboratory analysis, Defendant's product contained 311% of the claimed concentration of Omega-9 Oleic Acid, a mono-unsaturated fatty acid associated with increased risk of certain cancers as well as respiratory distress syndrome."  (Compl. at Overview).  Based on these allegations, Plaintiff asserted the following claims: (1) Violations of the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. 56:8-1 (Counts I-V); (2) Common Law Fraud (Count VI); (3) Unjust Enrichment (Count VII); (4) Breach of Express Warranty (Count VIII); and (5) Breach of the Implied Warranty of Merchantability (Count IX).

 On September 19, 2012, Nordic Naturals removed the matter to federal court pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2).  (Notice of Removal, ECF No. 1).  On September 24, 2012, Plaintiff filed a motion to remand the case to state court.  (ECF No. 6).  Plaintiff argued that he would be unable to represent both himself and a putative class because a named Plaintiff may not also serve as class counsel in federal court.  Thus, Plaintiff claimed that his dual role as class representative negates CAFA jurisdiction because it nullifies class certification in federal court thereby making it impossible for Plaintiff to recover the $5,000,000 minimum jurisdictional amount required under the CAFA.  On April 3, 2013, Magistrate Judge Joseph A. Dickson ("Judge Dickson") issued a Report and Recommendation ("R&R") expressly rejecting Plaintiff's argument that his dual role unilaterally stripped this Court of subject matter jurisdiction.  (ECF No. 16).  On April 15, 2013, this Court adopted Judge Dickson's R&R in its entirety as the Opinion of the Court.  (ECF No. 19).

Presently before the Court is Defendant's motion for judgment on the pleadings and to strike class allegations.  First, Defendant argues that Plaintiff's Complaint is preempted by

federal law because food labeling requirements are governed by the Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 *et seq.,* as amended by the Nutrition Labeling and Education Act, 21 U.S.C. §§ 341, *et seq.*, and Plaintiff's challenges would create conflicting obligations.  Even if the Complaint were not preempted, Defendant asserts that dismissal is still warranted for failure to state a cognizable claim.  Defendant argues that Plaintiff's NJCFA claim fails because he has not adequately pled ascertainable loss or causation.  In addition, Defendant contends that Plaintiff has failed to plead any specific facts setting forth the elements of common law fraud, unjust enrichment, or breach of warranty.  Defendant also seeks to strike the class allegations, as even Plaintiff has conceded in his motion to remand, that he cannot serve as both class counsel and class representative in this Court.

## II.  <u>LEGAL STANDARD</u>

### a.  <u>Motion for Judgment on the Pleadings</u>

"A motion to dismiss for failure to state a claim under Rule 12(c) is identical to one filed under Rule 12(b)(6), except Rule 12(c) allows for the motion to be filed after the filing of an answer, while Rule 12(b)(6) allows for the motion to be made in lieu of an answer." <u>Wellness Pub. v. Barefoot</u>, No. 02-3773, 2008 U.S. Dist. LEXIS 1514, 2008 WL 108889, at * 6 (D.N.J. Jan. 9, 2008); see also Fed. R. Civ. P. 12(h)(2)(B).  In either instance, a court is to use the same standard in evaluating the motions. <u>Reinbold v. U.S. Post Office</u>, 250 Fed. Appx. 465, 466 (3d Cir. 2007) (citing <u>Turbe v. Gov't of Virgin Islands</u>, 938 F.2d 427, 428 (3d Cir. 1991)).

In deciding a motion under Rule 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the  [Plaintiff]."  <u>Phillips v. Cnty. of Allegheny</u>, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations."

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  However, the Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id. (internal citations omitted).  "[A court is] not bound to accept as true a legal conclusion couched as a factual allegation."  Papasan v. Allain, 478 U.S. 265, 286 (1986).  Instead, assuming that the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above a speculative level."  Twombly, 550 U.S. at 555.

A complaint will survive a motion to dismiss if it contains sufficient factual matter to "state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 570).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged."  Id.  "Determining whether the allegations in a complaint are 'plausible' is a 'context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Young v. Speziale, Civ. No. 07-03129, 2009 WL 3806296, at *3 (D.N.J. Nov. 10, 2009) (quoting Iqbal, 556 U.S. at 679).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'shown'–that the pleader is entitled to relief."  Iqbal, 556 U.S. at 679.

### b.  Heightened Pleading Standard under Fed. R. Civ. P. 9(b) for Fraud Claims

Fed. R. Civ. P. 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  Plaintiffs "alleging fraud must state the circumstances of the alleged fraud[ulent act] with sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it is]

4

charged.'" <u>Park v. M&T Bank Corp.</u>, No. 09-cv-02921, 2010 U.S. Dist. LEXIS 24905, 2010 WL 1032649, at *5 (D.N.J. Mar. 16, 2010) (citing <u>Lum v. Bank of America</u>, 361 F.3d 217, 223-24 (3d Cir. 2004)).  Plaintiffs can satisfy this standard by alleging dates, times, places and other facts with precision.  <u>Park</u>, 2010 U.S. Dist. LEXIS 24905, 2010 WL 1032649, at *5.

### III.   DISCUSSION

#### a.  Preemption

Defendant challenges Plaintiff's claims on the ground that they are preempted by the Federal Food, Drug and Cosmetic Act ("FDCA"), 21 U.S.C. §§ 301, *et seq*., as amended by the Nutrition Labeling and Education Act ("NLEA"), 21 U.S.C. §§ 341, *et seq*..  Under the NLEA's preemption provision, a state may not impose "any requirement for nutritional labeling of food that is not identical to the requirement[s]" imposed by the Act.  21 U.S.C. § 343(1)(a)(4).  As defined by the Dietary Supplement Health and Education Act of 1994, 21 U.S.C. § 321 (ff), "a dietary supplement shall be deemed to be a food within the meaning of the [FDCA]."  Thus, the NLEA's preemption provision applies to the labeling of dietary supplements.

Oleic acid, a type of omega-9, is a naturally-occurring monounsaturated fatty acid.[2]  The FDA only requires manufacturers to list the amount of monounsaturated fat in dietary supplements under certain circumstances.[3]  If monounsaturated fat is listed, the FDA requires the nutrient content to be "at least equal to 80 percent of the value for that nutrient declared on the label."  21 C.F.R. § 101.9(g)(4)(ii).  Defendant contends that the FDA does not impose an upper

---

[2] <u>See</u> HAWLEY'S CONDENSED CHEMICAL DICTIONARY 820 (13th Ed. 1997) (defining "oleic acid" as "[a] monounsaturated fatty acid" that is "a component of almost all natural fats, as well as all oil" and stating that "[m]ost oleic acid is derived from animal tallow or vegetable oils"); <u>see also</u> STEDMAN'S MEDICAL DICTIONARY 1242 (26th ed. 1995) (defining "oleic acid" as "an unsaturated fatty acid that is the most widely distributed and abundant fatty acid in nature").

[3] <u>See</u> 21 C.F.R. § 101.9(c)(1)(iv) ("[A] statement of the number of grams of monounsaturated fat in a serving . . . may be declared voluntarily except that when polyunsaturated fat is declared, or when a claim about fatty acids or cholesterol is made on the label or in the labelling of a food other than one that meets the criteria . . . for a claim for "fat free," label declaration of monounsaturated fat is required.").

limit on the amount of monounsaturated fats that appear in a product over the amount declared

on the label.  (Def.'s Br. 10).  However, this is not entirely accurate.  Although no particular

percentage is listed, the FDA only permits "reasonable excesses" of a monounsaturated fat "over

labeled amounts . . . within current good manufacturing practices."  21 C.F.R. § 101.9(g)(6).

Plaintiff has alleged that Ultra Omega contains a concentration of fatty acids 311%

greater than what is listed on the label.  However, neither party has presented an argument as to

whether this alleged 311% excess is or is not "within good manufacturing practices."  Thus the

Court cannot determine whether Plaintiff's claims are in line with the requirements of the FDA

or whether they impose requirements not identical to those listed in the FDCA and thus warrant

preemption.  As the Court is unable to make this determination, it will rule on Defendant's

preemption argument.  Instead, the Court will proceed to address Defendant's other arguments.

### b.  NJCFA Claims (Counts I-V)

To succeed on a claim under the NJCFA, a plaintiff must show (1) an unlawful practice

by defendant, (2) an ascertainable loss on the part of plaintiffs, and (3) a causal relationship

between the defendant's unlawful conduct and the plaintiffs' loss.  Cox v. Sears Roebuck & Co.,

138 N.J. 2, 24 (1994).  Additionally, NJCFA claims must meet the heightened pleading

requirement of Fed. R. Civ. P. 9(b).  Defendant asserts that Plaintiff's NJCFA claims fail because

he is unable to articulate the manner in which he suffered an ascertainable loss, he fails to plead

unlawful conduct or causation and does not plead his claim with particularity.

The first element of an NJCFA claim, an unlawful practice by defendant, "typically

involves an affirmative act of fraud and can arise from an affirmative act, an omission, or a

violation of an administrative regulation."  Adamson v. Ortho-McNeil Pharm., Inc., 463 F. Supp.

2d 496, 501 (D.N.J. 2006).  "The misrepresentation has to be one which is material to the

6

transaction and which is a statement of fact, found to be false, made to induce the buyer to make the purchase." <u>Gennari v. Weichert Co. Realtors</u>, 148 N.J. 582, 691 A.2d 350, 366 (1997). Next, to properly plead an ascertainable loss, a plaintiff must allege facts showing "either an out-of-pocket loss or a demonstration of loss in value." <u>Dist. 1199P Health and Welfare Plan v. Janssen, L.P.</u>, 784 F. Supp. 2d 508, 530 (D.N.J. 2011) (internal citations omitted).  Finally, a plaintiff must show a causal nexus between the misrepresentation or concealment of the material fact by defendant and the loss suffered by any person.  <u>Dewey v. Volkswagen AG</u>, 558 F. Supp. 2d 505, 526 (D.N.J. 2008).

Plaintiff has failed to assert viable claims under the NJCFA.  Plaintiff contends that Defendant misrepresented the quality, testing and labeling standards of its product because Ultimate Omega allegedly contains 311% of the claimed concentration of Omega-9 Oleid Acid. (Compl. at Overview).  He further asserts that Defendant claimed it is "committed to delivering [to consumers] the world's safest . . . omega oils" and that it has achieved "award-winning" purity levels.  (Compl. ¶ 3).  This appears to be the basis of Plaintiff's "unlawful practice" claim. However, Plaintiff fails to provide any specific facts about where these alleged claims by Defendant appear, when he viewed them, or that he relied on them in deciding to purchase Ultimate Omega.  Moreover, even taking Plaintiff's claim that Ultimate Omega contained 311% more Omega-9 Oleic Acid as true, does not necessarily make Defendant's claims of "world's safest" and "award winning" false.  This would depend on how Defendant's products compare to others in the industry, which Plaintiff does not specify.  Thus Plaintiff has failed to plead an unlawful practice under the NJCFA with the requisite specificity.

The second element of the NJCFA, "ascertainable loss," is defined as "a cognizable and calculable loss due to the alleged [NJCFA] violation."  <u>Solo v. Bed Bath & Beyond, Inc.</u>, 2007

U.S. Dist. LEXIS 31088, *7-8 (D.N.J. April 26, 2007) (quoting <u>Thiedemann v. Mercedes-Benz USA, LLC</u>, 183 N.J. 234, 249 (2005)).  Ascertainable loss may occur "when a consumer received less than what was promised."  <u>Union Ink Co. v. AT&T Wireless</u>, 352 N.J. Super. 617, 646 (N.J. App. Div. 2002).  "A plaintiff may show ascertainable loss by 'either out-of-pocket loss or a demonstration of loss in value.'"  <u>Green v. Green Mtn. Coffee Roasters, Inc.</u>, 279 F.R.D. 275, 281 (D.N.J. 2011) (quoting <u>Thiedemann</u>, 183 N.J. at 248).  An actionable loss is not "hypothetical or illusory."  <u>Thiedemann</u>, 183 N.J. at 248.

Plaintiff alleges that he suffered ascertainable losses "in the form of actual out of pocket payment and expenditure" and by receiving "a tainted product less than, and different from, the product promised by defendant."  (Compl. ¶¶ 23-25).  These broad and conclusory allegations do not provide the specificity that is required in pleading ascertainable loss.  <u>See e.g.</u> <u>Solo v. Bed Bath & Beyond, Inc.</u>, No. 06-1908, 2007 U.S. Dist. LEXIS 31088, at *10 (D.N.J. Apr. 26, 2007) (stating that "broad and conclusory allegations are not sufficient to demonstrate an ascertainable loss"); <u>Lieberson v. Johnson and Johnson Consumer Cos.</u>, 2011 U.S. Dist. LEXIS 107596, *27 (D.N.J. Sept. 21, 2011) ("[A]bsent any specific information concerning the price of the Products or the price of any comparable products, Plaintiff's allegations concerning the ascertainable loss are nothing more than unsupported conclusory statements that are insufficient to withstand a motion to dismiss.").

Under the NJCFA, a plaintiff must also demonstrate that his or her ascertainable loss was "attributable to conduct made unlawful by the [Act]."  <u>Thiedemann</u>, 183 N.J. at 246.  A plaintiff must therefore "plead and prove a causal nexus between the alleged act of consumer fraud and the damages sustained."  <u>New Jersey Citizen Action v. Schering-Plough Corp.</u>, 367 N.J. Super. 8, 15 (N.J. App. Div. 2003).  Here, Plaintiff does not allege that he purchased Ultimate Omega

because of its representation of oleic acid and therefore he cannot establish causation.  See Franulovic v. Coca-Cola Co., Civ. No. 07-539, 2007 U.S. Dist. LEXIS 79732, at *25-26 (D.N.J. October 25, 2007) (finding plaintiff did not allege "causation as required in order to maintain a CFA claim" because she did not allege that she purchased the product "because of a certain misleading ad").  Instead, Plaintiff merely alleges that he "was seeking and in need of a product that would, among other things, slow the progression of osteoarthritis and reduce pain associated with such condition."  (Compl. ¶ 11).  Because Plaintiff has failed to adequately plead any of the elements required under the NJCFA, Plaintiffs NJCFA claims (Counts I-V) are **dismissed without prejudice.**

### c.  Common Law Fraud (Count VI)

To adequately plead a fraud claim under New Jersey law, a plaintiff must establish the following elements: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages."  Banco Popular N. Am. v. Gandi, 184 N.J. 161, 172-73, 876 A.2d 253 (2005) (quoting Gennari v. Weichert Co. Realtors, 148 N.J. 582, 610, 691 A.2d 350 (1997)).  Additionally, a fraud claim must be pled with particularity pursuant to Fed. R. Civ. P. 9(b).

Here, Plaintiff fails to plead a viable fraud claim.  Plaintiff alleges that Ultimate Omega contains 311% of the labeled concentration of oleic acid but fails to plead specific facts to show that Defendant's representations about Ultimate Omega were false.  In addition, Plaintiff "fails to identify with specificity the nature of the misrepresentations, when they were made, which representations he relied on, and how he relied on them."  Hoffman v. Cogent Solutions Group, LLC., Civ. No. 13-00079, 2013 U.S. Dist. LEXIS 176056, at *12 (D.N.J. Dec. 16, 2013).

Finally, Plaintiff has not sufficiently pled any resulting damages from the product.  See Hoffman
v. Nutraceutical Corp., No. 12-5803, 2013 U.S. Dist. LEXIS 81559, at *3 (D.N.J. June 10, 2013)
(dismissing fraud claim because "Plaintiff failed to identify the resulting damages").  Thus
Plaintiff's common law fraud claim (Count VI) is **dismissed without prejudice.**

### d.  Unjust Enrichment (Count VII)

To state a claim for unjust enrichment under New Jersey law, a plaintiff must show that
"(1) a defendant received a benefit from the plaintiff; (2) retention of the benefit by the defendant
without payment would be unjust; (3) plaintiff expected remuneration from defendant at the time
he performed or conferred a benefit on defendant; and (4) the failure of remuneration enriched
the defendant beyond its contractual rights."  Alin v. American Honda Co., No. 08-4525, 2010
U.S. Dist. LEXIS 32584, at *39 (D.N.J. Mar. 31, 2010).  In addition, "under New Jersey law, an
indirect purchaser cannot succeed on a claim for unjust enrichment.  When an individual
purchases a consumer product from a third-party store and not the manufacturer, the purchaser
has not conferred a benefit directly to the manufacturer such that the manufacturer could be
found to have been unjustly enriched."  Weske v. Samsung Elecs. Am., Inc., 2012 U.S. Dist.
LEXIS 32289, at *23 (D.N.J. Mar. 12, 2012); see also Hughes v. Panasonic Consumer
Electronics, Co., 2011 U.S. Dist. LEXIS 79504, at *27 (D.N.J. July 21, 2011) (dismissing unjust
enrichment claim on Rule 12(b)(6) motion where plaintiffs in purported class action purchased
allegedly defective product from third-party sellers).

Here, Plaintiff fails to state a claim for unjust enrichment against Defendant.  Plaintiff
alleges that Defendant is "indebted to class members for the sums paid by class members to
Defendant for purchase of a misrepresented product.  Retention of said sums would result in the
unlawful, unjust and inequitable enrichment of Defendant."  (Compl. ¶ 57).  However, "[u]njust

10

enrichment is not a viable theory . . . in circumstances in which a consumer purchases specific goods and receives those specific goods." In re Cheerios Mktg. & Sales Practices Litig., No. 09-cv-2413, 2012 U.S. Dist. LEXIS 128325, at *13 (D.N.J. Sept. 10, 2012).  In this case, Plaintiff purchased and received Ultimate Omega.  Plaintiff does not allege that no value was received for purchasing the product.  Moreover, Plaintiff does not articulate how Ultimate Omega "failed to function as advertised, that he consumed and was thereby injured by the product, or why it was unjust for Defendant to retain the money paid for the product." Cogent Solutions Group, LLC., 2013 U.S. Dist. LEXIS 176056, at *13-14.  In addition, Plaintiff does not allege whether he purchased the product directly from Defendant or from a third-party seller.  This information is necessary to discern whether Plaintiff has an adequate unjust enrichment claim since "under New Jersey law, an indirect purchaser cannot succeed on a claim for unjust enrichment." Weske, 2012 U.S. Dist. LEXIS 32289, at *23.  Accordingly, Plaintiff's claim for unjust enrichment (Count VII) is **dismissed without prejudice.**

### e.  Breach of Warranty Claims (Counts VIII-IX)

Plaintiff raises claims of breach of express and implied warranties.  Specifically, Plaintiff alleges that he entered into a contract with Defendant for the purchase of Ultimate Omega and that, in the contract, Defendant made express promises as to the "purity, labeling and high quality" of the product.  (Compl. ¶¶ 61-62).  Additionally, Plaintiff alleges that Defendant breached the implied warranty of merchantability because the product, Ultimate Omega, "failed to conform to Defendant's promises of purity, constituent ingredients and quality" and "was not fit for the ordinary purpose for which it was intended to be used."  (Compl. ¶ 70).

To establish a claim for breach of express warranty under New Jersey law, a plaintiff must allege: "(1) that Defendant made an affirmation, promise or description about the product;

(2) that this affirmation, promise or description became part of the basis of the bargain for the product; and (3) that the product ultimately did not conform to the affirmation, promise or description." Snyder v. Farnam Companies, Inc., 792 F. Supp. 2d 712, 721 (D.N.J. 2011) (citations omitted). However, "an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty." N.J. Stat. Ann. § 12A:2-313(2). To recover damages for breach of express warranty, a plaintiff must establish that such damages were reasonably foreseeable at the time that the contract was entered into. See Spring Motors Distribs., Inc. v. Ford Motor Co., 98 N.J. 555, 579-80, 489 A.2d 660 (1985).

To state a claim for breach of the implied warranty of merchantability under New Jersey law, a plaintiff must allege "(1) that a merchant sold goods, (2) which were not 'merchantable' at the time of sale, (3) injury and damages to the plaintiff or its property, (4) which were [] caused proximately and in fact by the defective nature of the goods, and (5) notice to the seller of injury." Marcus v. BMW of N. Am., LLC, 687 F.3d 583, 600 n.8 (3d Cir. 2012) (internal citations omitted). "If the buyer, expressly or by implication, makes known to the seller the particular purpose for which the article is required and it appears that he has relied on the seller's skill or judgment, an implied warranty arises of reasonable fitness for that purpose." Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 370, 161 A.2d 69 (1960). To establish a breach of either warranty, Plaintiffs "must show that the equipment they purchased from defendant was defective." Crozier v. Johnson & Johnson Consumer Companies, Inc., 901 F. Supp. 2d 494, 509 (D.N.J. 2012) (internal citation omitted). Specifically, a claim under either implied warranty "requires a showing regarding the product's functionality, not the advertisements that allegedly induced a customer to purchase it." Crozier, 901 F. Supp. 2d at 509.

Here, Plaintiff fails to state a claim for breach of an express or implied warranty. Plaintiff merely makes broad conclusory statements and essentially recites the elements required under each claim.  Plaintiff fails to provide any details about Defendant's alleged promise or to explain how the product failed to conform to this promise.  Plaintiff also neglects to provide why any representations by the Defendant would not be considered the "seller's opinion" or a "commendation of the goods."  In addition, Plaintiff does not provide any details about the product's functionality and how or why it was defective.  Finally, Defendant fails to allege that he even ingested the product or to identify any injuries or specific damages that were caused by the product.  Accordingly, Plaintiff's breach of warranty claims (Counts VIII-IX) are **dismissed without prejudice.**

> **f.   Motion to Strike Class Allegations**

As all of Plaintiff's claims have been dismissed, Defendant's request to strike the class allegations is denied as moot.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's motion for judgment on the pleadings is **granted** and Plaintiff's Complaint is **dismissed without prejudice.**  Plaintiff is granted leave to amend the Complaint.  An appropriate Order accompanies this Opinion.

s/Susan D. Wigenton
Susan D. Wigenton, U.S.D.J.

Date:          April 17, 2014
Original:     Clerk's Office
cc:            Hon. Madeline C. Arleo, U.S.M.J.
               All Counsel of Record
               File